IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| JOSE LUIS RAMOS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:12-cv-856 (GBL/TCB) |
| | ) | |
| MOLINA HEALTHCARE, INC., *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants Molina Healthcare, Inc.'s and Molina Information Systems, Inc.'s Motion for Summary Judgment on Plaintiff's claims of age-based employment discrimination and retaliation. (Doc. 46.) This case concerns Plaintiff's allegations that his previous employer discriminated against him on the basis of his age and retaliated against him as a result of voicing concerns of discriminatory employment practices to the company in violation of the Age Discrimination in Employment Act ("ADEA"). There are two issues before the Court.

The first issue is whether the Court should grant Defendants summary judgment on Plaintiff's age discrimination claim where Plaintiff alleges that he was wrongfully terminated because of his age and a former manager's age-based statements directed toward other employees. The Court holds that summary judgment must be granted on Plaintiff's age discrimination claim for two reasons. First, Plaintiff has not established a prima facie case of age discrimination because he fails to present any evidence that he met his employer's legitimate expectations at the time of his termination. Second, even assuming he does establish a prima facie case, Plaintiff fails to demonstrate a genuine issue of fact on the issue of pretext because his

evidence only asserts that the factual underpinnings of his termination were incorrect without sufficiently rebutting Defendants' legitimate nondiscriminatory reasons for termination. Therefore, the Court holds that Plaintiff's age discrimination claim fails, and the Court grants summary judgment in favor of Defendants with respect to Plaintiff's age discrimination claim.

The second issue is whether the Court should grant Defendants summary judgment on Plaintiff's claim that Defendants removed his team and terminated his employment in retaliation for engaging in protected activity in which he discussed possible age discrimination by his former manager with his designated human resources representative. The Court grants summary judgment in favor of Defendants on the retaliation claim for two reasons. First, Plaintiff cannot establish a prima facie case because there is a lack of evidence establishing that his manager (the decision maker for his termination) had knowledge of the alleged protected activity. Second, Plaintiff's evidence in support of retaliation merely challenges the veracity of the proffered reasons for termination without showing a genuine issue of fact regarding Defendants' legitimate nondiscriminatory reasons sufficient to raise an inference of pretext. Therefore, the Court holds that Plaintiff's retaliation claim fails and that Defendants are entitled to summary judgment on his retaliation claim.

## I.    BACKGROUND

Plaintiff Jose Luis Ramos ("Ramos") brings this case against his previous employer, Defendants Molina Healthcare, Inc. and Molina Information Systems, Inc. (collectively "Molina").

Unisys hired Ramos to work as Executive Architect beginning October 2007. (Pl.'s Opp'n at 3, Doc. 50; Defs.' Mem. Supp. Summ. J. at 2, Doc. 46.) Despite increases in responsibility and remuneration, a reduction in force two years later caused Unisys to schedule

Ramos's termination for September 1, 2009. (*Id.*) Instead, Ramos transferred into the position of Engineering Director for Unisys, working under Tim Skeen ("Skeen"). (*Id.*) Unisys and Ramos considered this transfer a promotion despite Ramos's salary remaining the same. (Pl.'s Opp'n at 3-4, Doc. 50; Defs.' Mem. Supp. Summ. J. at 3, Doc. 46.) When Defendant Molina acquired the Unisys Medicaid Solutions group effective May 1, 2010, Ramos's employment as Engineering Director transferred to Molina while maintaining his position and direct reporting relationship to Skeen, Vice President of Implementation. (Pl.'s Opp'n at 4, Doc. 50; Defs.' Mem. Supp. Summ. J. at 3, Doc. 46.) Molina's management hierarchy included Director (Ramos), then Assistant or Associate Vice President, then Vice President (Skeen), followed by Senior Vice President. (Defs.' Mem. Supp. Summ. J. at 9, Doc. 46.) Skeen's promotion to Chief Technology Officer ("CTO") in September 2010 created a Vice President vacancy to which Ramos applied. (Pl.'s Opp'n at 4, Doc. 50; Defs.' Mem. Supp. Summ. J. at 3, Doc. 46.) Ramos interviewed for the position but did not receive the job. (Defs.' Ex. 4: 66:7-72:3.) Instead, Tim Brewer ("Brewer") became Vice President of Implementation, and Ramos began reporting to Brewer around late October 2010. (*Id.* at 71:24-25; Pl.'s Ex. J ¶ 7.)

In his position as Engineering Director, Ramos's responsibilities included managing a team of up to forty subordinate employees. (Defs.' Ex. 4: 60:19-61:1.) Early in 2010, Skeen targeted specific individuals within Ramos's group for termination and instructed Ramos to carry out those terminations. Ramos specifically objected to Skeen's decision to terminate Roy Levison ("Levison") and Erich Friedrichs ("Friedrichs"). (Defs.' Ex. 5: 49:12-51:5; 52:20-53:4.) Skeen testified that Ramos's predecessor John Leopold experienced performance issues with Levison and that the handover of the management role to Ramos instigated the creation of Levison's performance improvement plan. (Defs.' Ex. 3: 31:20-32:8.) Ramos frequently

3

tracked Levison's performance related to the performance improvement plan. (Defs.' Ex. 4: 102:3-102:25.)

According to Ramos, the initial request to terminate Levison came from Brewer during a client meeting immediately prior to Ramos assuming the Engineering Director role. (Defs.' Ex. 4: 105:15-22.) Skeen testifies that this initial meeting between Ramos and Brewer (as Account Manager) resulted in negative feedback from Brewer to Skeen about his interaction with Ramos. (Defs.' Ex. 3: 30:6-14.) Ramos further maintains that Skeen developed a methodology whereby he assigned Levison such a heavy burden so as to create an "impossible task" to which Levison would surely fail. (Defs.' Ex. 4: 106:23-24; Pl.'s Ex. J: 105-107.) Ramos frequently tracked Levison's performance and believed him to be an adequate performer who "was doing the best he could," but based on Levison's inability to meet the impossibly heavy burden mandated by Skeen, Ramos followed through with Levison's termination against his own belief. (Defs.' Ex. 4: 106:12-107:21.) In any event, Ramos did carry out the termination, but he disagreed with the decision as he felt Levison had been set up for failure. (*Id.*)

According to Ramos, Skeen repeatedly told him to fire Friedrichs from the beginning of his employment under Skeen and continuing even after Skeen became CTO until approximately January 2011. (Defs.' Ex. 4 at 104:16-108:17.) Skeen's instruction to terminate Friedrichs caused Ramos to seek the advice of the only human resources manager for the group, April Krajewski ("Krajewski"). (Defs.' Ex. 5: 12:4-13:5.) Ramos and Krajewski discussed Ramos's concerns about the instruction to terminate Friedrichs on approximately six occasions in 2010 and 2011. (Defs.' Ex. 4 at 108:18-112:21; Ex. 5 at 50:6-51:5.) According to Ramos, in

approximately "half a dozen conversations," Skeen told Ramos "Friedrichs was too old [ . . . ] slow, [and] incompetent."[1] (Defs.' Ex. 4: 105:1-105-11, 108:6-17.)

Performance issues were not discussed during these conversations; they were focused rather on Ramos's concern about the targeting of older employees for termination. (Defs.' Ex. 4 at 108:18-112:21.) Krajewski reassured Ramos that terminations based on age were not allowed, and although Ramos claims Krajewski acted alarmed, she testifies that she merely sought to ease Ramos's mind. (Defs.' Ex. 4 at 109:1-5, 112:7-21; Defs.' Ex. 5 at 50:8-18.) Krajewski claims that the nature of Molina's employee population is such that older employees will always be affected in a reduction, and that she told Ramos he should not concern himself with these types of issues because she would look into them when the need arose. (Defs.' Ex. 5: 50:17-19.)

During his time as Ramos's manager, Skeen never documented any poor performance or inappropriate interactions by Ramos.  However, in his deposition testimony, Skeen alleges that Ramos's frequent contentious interactions with other employees overshadowed any positive aspects of his performance. (Defs.' Ex. 3: 27:12-28:12; 29:6-30:14.) Although the typical policy included placing underperforming or unsatisfactory employees on a formal ninety-day improvement plan, Skeen never placed Ramos on one of these plans, and any performance directives were made verbally. (Defs.' Ex. 3: 25:18-26:2; 27:9-10.)  Despite the absence of information in Ramos's employment record, Skeen testified that Ramos's performance deteriorated from May to Fall 2010 particularly with regard to "interactions and issues that were happening with staff underneath him and with peers." (Defs.' Ex. 3: 27:17-28:12.) Krajewski corroborates Skeen's claim about Ramos's performance through her testimony that Skeen approached her with concerns about Ramos's interactions with employees after he received some

---

[1] Defendants do not appear to dispute Plaintiff's characterization of Skeen's statements.

complaints. (Defs.' Ex. 5: 57:10-15.) Skeen does not recall having any conversations about terminating Ramos's employment prior to Brewer's assumption of the manager role. (Defs.' Ex. 3: 31:9-17.)

With Brewer's transition into the Vice President role as Ramos's manager, Molina simultaneously underwent an organizational transition wherein Brewer decided to remove every one of Ramos's reporting employees. According to Brewer's testimony, the removal of Ramos's team occurred all at once and may have occurred without clear communication to Ramos regarding justification or details. (Defs.' Ex. 5: 58:24-59:11.) Despite having lost all of his reporting employees at once without detailed communication, Brewer testifies this was neither a demotion nor the result of Brewer's view that Ramos was not capable of managing these individuals. (*Id.* at 59:12-23.) Brewer recalls that Ramos may have been upset that his reports were being taken away, but asserts that this resulted merely from organizational needs. (*Id.* at 61:24-62:25.)

Ramos contends that the removal of his team resulted as a consequence of his report to human resources that Skeen may have been engaging in age discrimination by targeting Friedrichs. (Defs.' Ex. 4: 159:11-160:6.) Ramos's only evidence for this claim is his own testimony stating Brewer told him his team had been removed because of his failure to fire Friedrichs. (*Id.* at 160:7-14.) The fact Ramos's team was removed from underneath him combined with a period of uncertainty as to his future role led Ramos to believe his termination was imminent. (*Id.* at 160:7-162:21.) Ramos attributes this retaliation to the fact he did not do what Skeen wanted him to do, and not necessarily that he spoke with Krajewski. (*Id.* at 161:16-162:2.)

6

A few weeks later, Brewer assigned Ramos to a larger project, the "4.8 upgrade project." (Defs.' Ex. 6: 64:19-66:10.) Brewer selected Ramos to lead this project because of Ramos's skill with managing large-scale implementation involving multiple teams plus his technical foundation from Unisys. (*Id.* at 66:18-67:20.) Brewer testifies that he was not satisfied with Ramos's performance on the 4.8 upgrade project. (*Id.* at 74:12-15.) According to Brewer, Ramos disagreed with Brewer about the best allocation of resources and became upset with Brewer's use of "Indian resources and displacing American jobs." (*Id.* at 74:17-75:7.) Ramos flatly denies these accusations. (Pl.'s Ex. J ¶ 22.) In any event, it is apparent from the record that Ramos and Brewer disagreed about the development of the most appropriate plan for carrying out the project, and this led to Brewer's dissatisfaction with Ramos's performance. (Defs.' Ex. 6: 74:16-76:13, 77:6-15; Defs.' Ex. 4: 143:4-146:14.) Brewer claims that Ramos's updates to the work plan drafts failed to incorporate key tasks or updates leading to the information being outdated. (Defs.' Ex. 6: 76:14-77:5.) Brewer also claims that Ramos would assign tasks to individuals without discussing that individual's capacity or consulting that individual's manager. (*Id.* at 77:16-25.) Ramos counters that managers made the assignments and not him. (Defs.' Ex. 4: 145:3-146:14.) Brewer further testified that he received calls from upset individuals about Ramos's comments and derogatory activity, and these series of events led Brewer to begin to consider that the project might not succeed with Ramos on it. (Defs.' Ex. 6: 78:10-79:1.)

Two events caused Brewer to make the final decision to terminate Ramos's employment. First, Brewer testifies that during one of their meetings, Ramos told Brewer he would refuse to attend important meetings and not work so that Brewer would see how important he was and give him his way. (*Id.* at 80:8-18.) Brewer claims that Ramos said Brewer could simply lay him

off it he did not like it. (*Id.* at 80:19-21.) Ramos strongly disputes that this conversation took place or that he threatened not to work. (Defs.' Ex. 4: 128:2-129:8.) Brewer admits that Ramos did work as he was supposed to, but Krajewski testifies that she received an email from Brewer documenting Ramos's threat. (*Id.* at 80:24-81:1; Defs.' Ex. 5 58:13-21, 59:21-60:11.) According to Krajewski, this email marked the first indication of Brewer's problems with Ramos. (*Id.* at 58:22-59:1.) The testimony indicates that Brewer sent this email seeking Krajewski's recommendation on how to handle the situation. (*Id.* at 60:12-61:22.) Krajewski's testimony further indicates that she received additional emails indicating Brewer's dissatisfaction with Ramos's performance. (*Id.* 58:13-21.) Brewer confirmed his decision to terminate Ramos's employment four weeks later. (*Id.* at 62:4-10.)

Brewer claims he personally witnessed and received reports from others that Ramos acted belligerently toward clients and members of the project team during conference calls. (Defs.' Ex. 6: 83:21-85:12.) Brewer claims he verbally counseled Ramos about the unacceptability of this behavior, but Brewer never documented, counseled, or reprimanded Ramos on this behavior in writing. (*Id.* 85:13-86:13.) Ramos denies the allegation that he ever received a complaint about the way he treated others on conference calls or in person. (Pl.'s Ex. J ¶ 24.) Brewer also claims he discussed specific goals with Ramos that needed to be achieved although these were never written explicitly besides being located in the project charter. (*Id.* at 95:15-96:21.) Brewer testifies that Ramos missed multiple of these deadlines including a particularly big deadline in early 2011. (Defs.' Ex. 6: 98:1-99:3.) Although Brewer never placed Ramos on a performance plan, Brewer testifies that he discussed doing so with Krajewski after sending her the email documenting Ramos's threat not to work. (*Id.* at 92:11-94:5.)

8

The second and "final straw" to terminate Ramos's employment occurred when Brewer learned about Ramos's particularly belligerent and contentious interaction with an employee named Tammy Lynn ("Lynn"). (Defs.' Ex. 6: 82:23-83:3, 88:11-90:6.) Ramos denies that he yelled at or berated any individuals during this or any other conference call and further supports this denial with Goldberg's declaration. (Pl.'s Ex. J ¶ 24, Ex. K ¶ 2; Defs.' Ex. 4: 135:19-136:25, 137:15-24.) Brewer instructed Lynn to speak with Krajewski about the incident for documentation, and Krajewski testified she emailed a summary of that meeting. (Defs.' Ex. 5: 68:11-69:14; Defs.' Ex. 12.) Brewer received email feedback from Skeen on Ramos's performance and also sought feedback from others as well. (*Id.* at 102:6-105:5.) Despite the recommendation to place Ramos on an improvement plan, Brewer asserts the tremendous amount of risk to the company with Ramos continuing in the role outweighed any desire to afford Ramos a ninety-day improvement period. (Defs.' Ex. 6: 101:5-102:5.)

According to his testimony, Brewer initiated the decision to terminate Ramos's employment based on lack of performance, inability to deliver on his project, and negative interpersonal actions placing the company at risk. (*Id.* at 105:6-10.) Although Brewer considered placing Ramos on other projects, Brewer claims there were no other projects that could have alleviated his concerns. (*Id.* at 105:17-106:18.) Krajewski testifies that Molina's checks and balances ensure review of any termination decisions. (Defs.' Ex. 5: 83:1-22.) After Brewer recommended Ramos's termination, Jim Foster, Norm Nichols, Terry Bayer, and Krajewski all reviewed the decision. (*Id.* at 85:2-5.) In particular, Krajewski noted that the decision to terminate Ramos stemmed from his refusal to accept assignments and the negative feedback regarding his interpersonal interactions in light of his position level and responsibilities for employee morale. (*Id.* at 85:22-86:22, 87:19-24.)

9

Molina terminated Ramos's employment on a conference call led by Brewer and attended by Ramos, Krajewski, and possibly others. (*Id.* at 9:9-12; Defs.' Ex. 6:112:9-18.) During the call, it was not clearly communicated to Ramos that his termination was for cause and not due to a layoff. (*Id.* at 112:19-113:24.) After Ramos's termination, Molina replaced Ramos with Raj Mishra, a younger employee outside the protected class. (*Id.* at 108:1-17; Pl.'s Opp'n at 12, Doc. 50.)

## II.    PROCEDURAL HISTORY

Plaintiff filed a complaint with the EEOC, and his right to sue letter was issued on December 1, 2011. Plaintiff filed his Complaint on March 20, 2012 in the United States District Court for the Central District of California alleging nine counts: Count I – age discrimination under the ADEA, Count II – retaliation under the ADEA, Count III – race and national origin discrimination under the Civil Rights Act, Count IV – discrimination under the California Fair Employment and Housing Act, Count V – discrimination under the California Fair Employment and Housing Act, Count VI – retaliation under the California Fair Employment and Housing Act, Count VII – whistleblowing in violation of California public policy, Count VIII – discrimination in violation of California public policy, and Count IX – failure to investigate discrimination under the California Fair Employment and Housing Act. On July 27, 2012, Defendants successfully transferred the case from the Central District of California to the Eastern District of Virginia. (*See* Docs. 16, 17.) On January 18, 2013, the Court granted Defendants' Rule 12(b)(6) Motion to Dismiss seven of the nine claims (Counts III – IX), leaving only Plaintiff's ADEA claims of age discrimination (Count I) and retaliation (Count II) for the Court's consideration. (Doc. 39.) Thus, the two counts relevant here are age discrimination and retaliation (Counts I and II). Defendants filed their present Motion for Summary Judgment on April 19, 2013. (Doc.

46.)  Having considered oral argument and briefing on this Motion, the Court now issues its ruling.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c) (2013).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.  *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of material fact for trial exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247-48).

A "material fact" is a fact that might affect the outcome of a party's case.  *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## IV.   DISCUSSION [2]

The Court grants Defendants' motion for summary judgment. First, the Court concludes that Plaintiff's age discrimination claim fails because Plaintiff has not demonstrated that he met Defendants' legitimate expectations at the time of his termination and fails to rebut Defendants' legitimate and nondiscriminatory reasons for termination showing a genuine issue of fact regarding pretext. Second, the Court holds Plaintiff's retaliation claim fails because Plaintiff cannot establish any nexus between his protected activity and the adverse action. Plaintiff additionally fails to rebut Defendants' proffered legitimate and non-retaliatory reasons and show a genuine issue of fact that Defendant's proffered reasons are a pretext for discrimination.

### A.   Plaintiff Fails to Establish Discrimination Based on Age

The Court grants Defendants' Motion for Summary Judgment on Plaintiff's age discrimination claim because Plaintiff fails to raise a genuine issue of material fact with respect to his meeting Defendants' legitimate expectations at the time of Defendants' decision to terminate his employment. Even assuming Plaintiff does establish a prima facie case for age

---

[2] The Court notes that this case was originally filed in the Central District of California and transferred to this Court pursuant to 28 U.S.C. § 1404(a). Therefore, the Ninth Circuit's substantive law would normally apply to Plaintiff's claims. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Defendants, however, filed their Motion for Summary Judgment applying Fourth Circuit law and Plaintiff, without objection, opposed Defendants' Motion also applying the law of this Circuit. As a result, the Court will apply Fourth Circuit law to Plaintiff's claims.

discrimination, Plaintiff nonetheless fails to provide sufficient evidence to rebut Defendants'

assertion that his termination was based on a legitimate and nondiscriminatory basis sufficient to

raise a genuine issue of fact on the issue pretext.

### 1. Plaintiff Fails to Meet the Prima Facie Case

The Court finds that Plaintiff fails to establish a prima facie case for age discrimination

because Plaintiff has not produced any evidence to create a genuine issue of fact that Plaintiff

satisfactorily met his employer's legitimate expectations at the time of his termination.  To avoid

summary judgment and establish a claim of employment discrimination for protected age-related

reasons, courts require that the plaintiff establish age as the "but for" cause of the adverse

employment action.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2523 (2013);

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009).  In *Nassar*, 133 S. Ct. at 2527-34,

the Supreme Court reaffirmed that ADEA discrimination claims are analyzed differently than

Title VII discrimination claims.  The different readings arise from the Court's interpretation of

the phrase "because of age" in light of textual differences, which demonstrate Congress's intent

to create different burdens for each statute.  *Id.* at 2527-29.  Where Title VII requires

discrimination as only a motivating factor, the ADEA requires "but for" causation.[3]  *See id.*; 42

U.S.C. §2000(e)-3(a) (Title VII); 29 U.S.C. §623(a) (ADEA).  Thus, Plaintiff's claim of age

discrimination is evaluated under the "but for" standard in accordance with the Supreme Court's

decisions in *Nassar*, 133 S. Ct. at 2523, 2527-29, and *Gross*, 557 U.S. at 177-78.

Evidence of causation may be direct or circumstantial.  As explained in *Harris v.*

*Powhatan County School Board*, where the only evidence is circumstantial, ADEA claims are

analyzed under the *McDonnell Douglas* burden-shifting framework.  885 F. Supp. 2d 804, 812-

---

[3] *Nassar* further established that Title VII retaliation claims and ADEA retaliation claims are both analyzed under a "but for" standard thereby abrogating *Smith v. Xerox Corp.*, 602 F.3d 320 (5th Cir. 2010).

13 (E.D. Va. 2012). In order to meet the prima facie case, "the plaintiff must ultimately prove not only that the employer unlawfully discriminated on the basis of age but also that age discrimination was the 'but for' cause of the adverse action." *Id.* (citing *Gross v. FBL*, 557 U.S. at 176). "Direct evidence is evidence that the employer announced, or admitted, or otherwise unmistakably indicated that age was a determining factor in the particular employment action." *Marlow v. Chesterfield Cnty. Sch. Bd.*, 749 F. Supp. 2d 417, 427 (E.D. Va. 2010) (internal quotation marks omitted) (citing *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982)).

To establish a claim of age discrimination, Plaintiff must demonstrate (1) that he is a member of a protected class, (2) who suffered an adverse employment action, (3) despite satisfactorily meeting the employer's legitimate expectations at the time of the adverse action, and (4) that he has been treated less favorably than persons not members of the protected class. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996); *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x 675, 682 (4th Cir. 2009); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

Plaintiff's membership in a protected class on account of his age is not disputed. Plaintiff is over forty, and therefore a member of the protected class under the ADEA. *See* 29 U.S.C. § 623(a)(1) (prohibiting the discrimination of employees because of their age but limiting the class to individuals aged 40 or older); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. at 312-13; *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 929 n. 6 (4th Cir. 2007). Termination of Plaintiff's employment constituted an adverse action because adverse employment actions are those that adversely affect "the terms, conditions, or benefits" of employment. *Von Gunten v. Maryland*, 243 F.3d 858, 866 (4th Cir. 2001), *rev'd on other grounds by Burlington N. & Santa*

14

*Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Defendants replaced Plaintiff with a much younger employee, and "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. at 313. Although Plaintiff also discussed the removal of his team during oral argument, this action relates only to retaliation; therefore, the Court finds Plaintiff's termination as the only adverse employment action with respect to the age discrimination claim.

The third element of the prima facie case requires that Plaintiff demonstrate he was meeting his employer's legitimate expectations at the time of his termination. The Court finds that Plaintiff has failed to establish a prima facie case for age discrimination because Plaintiff fails to produce any evidence to create a genuine issue of fact that Plaintiff satisfactorily met his employer's legitimate expectations at the time of his termination.

Plaintiff points to three pieces of evidence in an attempt to infer he was satisfactorily meeting Defendants' expectations. First, Plaintiff relies upon the absence of unsatisfactory performance documentation such as a performance improvement plan. (Pl.'s Opp'n at 13, Doc. 50.) Second, Plaintiff submits an email sent from Brewer to Plaintiff just one month prior to his termination suggesting Brewer's appreciation for Plaintiff's work. (*Id.*; Pl.'s Ex. E.) Third, Plaintiff attempts to undermine the veracity of Defendants' assertions through testimony from Plaintiff and a coworker, Rob Goldberg. (Pl.'s Exs. J, K.)

The lack of a performance improvement plan and one positive email do not show that Plaintiff *met* his employer's expectations. On balance, the absence of a performance improvement plan along with one positive email (Pl.'s Ex. E) do not establish the employer was

15

*satisfied* but more readily establish the inverse—that the employer was not *dissatisfied*. Moreover, although Plaintiff has submitted evidence to suggest that use of performance improvement plans by Defendants was typical, Plaintiff has submitted no evidence to indicate that company policy required utilization of a performance improvement plan prior to termination. (*See* Defs.' Ex. 6: 18:21-19:12; Defs.' Ex. 4: 112:22-113:5.) Thus, Plaintiff fails to raise a genuine issue with respect to whether he met Defendants' legitimate expectations at the time of termination.

Additionally, courts have made clear that a Plaintiff's own testimony cannot establish a genuine issue of material fact regarding the employer's expectations. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (citations omitted)).   In *King v. Rumsfeld*, the plaintiff sought to introduce testimony from his coworkers to establish a genuine issue, but the court declined to consider this evidence relevant. 328 F.3d at 149.  Similarly, in *Tinsley v. First Union National Bank*, the court stated, "although the affidavits put forth by [Plaintiff] document the fact that certain co-workers, [b]ank customers, and attorneys believed [Plaintiff] was doing a good job, they fail to address whether management honestly believed that [Plaintiff] was doing a good job." 155 F.3d 435, 444 (4th Cir. 1998) *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  It is the employer's point of view that controls whether the employee is satisfactorily meeting expectations, so evidence demonstrating a plaintiff's or third party's interpretation is not relevant toward establishing this prima facie element. *Id.* Made clear in *King v. Rumsfeld*, Plaintiff's and Goldberg's testimony do not establish Defendants' belief regarding satisfactory performance. 328 F.3d at 149.  Indeed, the only

16

evidence Plaintiff submits which directly relates to Defendants' belief are the absence of a performance improvement plan and the email sent from Brewer to Plaintiff about one month prior to Plaintiff's termination.

Accordingly, the Court concludes that Plaintiff fails to establish a prima facie case for age discrimination.

### 2. Plaintiff Fails to Demonstrate Pretext

Assuming, *arguendo*, that Plaintiff does establish a prima facie case for age discrimination, the Court finds that Plaintiff nonetheless fails to demonstrate a genuine issue of fact that Defendants' legitimate and nondiscriminatory reasons for termination area mere pretext for age discrimination under the well-established burden shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804-05 (1973).

According to the *McDonnell Douglas* burden-shifting test, once Plaintiff establishes a prima facie case, the burden shifts to Defendants "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)). At this stage of the burden-shifting test, a defendant's burden "is one of production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and citations omitted). If the employer submits a legitimate nondiscriminatory reason, then the ultimate burden shifts back to Plaintiff to demonstrate "that the legitimate reasons offered by [D]efendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Defendants submit five types of evidence in support of their position that Plaintiff failed to meet its legitimate expectations at the time of termination.  First, Krajewski testified that Skeen, Brewer, and Lynn each spoke with her regarding Plaintiff's negative interpersonal interactions, and this assertion is corroborated by testimony of Skeen and Brewer. (Defs.' Ex. 5: 57:7-15, 58:13-59:1, 68:5-69:3; Defs.' Ex. 6: 74:17-75:7, 83:21-85:12; Defs.' Ex. 12.)  Second, testimony from Skeen indicates that Ramos did not follow instructions.[4] (Defs.' Ex. 11; Defs.' Ex. 6: 76:14-77:15.)  Third, Brewer testified he became increasingly dissatisfied with Ramos's performance on the 4.8 upgrade plan.[5]  (*Id.* at 74:17-75:7.)  Fourth, Brewer testified that Ramos threatened to not work as a result of growing disagreement about the best method for developing a project plan.  (*Id.* at 80:8-18.)[6]  Fifth, Krajewski and Brewer testified and presented documentation of Ramos's unprofessional conduct on a conference call toward Lynn. (Defs.' Ex. 12; Defs.' Ex. 5: 68-11-72:4; Defs.' Ex. 6: 88:15-16, 88:24-89:2, 159:2-160:2.)  This evidence, without any rebuttal evidence, forecloses a factual issue with respect to whether Defendants reasonably viewed Plaintiff as not meeting its legitimate expectations.  *See Morrall v. Gates*, 370 F. App'x 396, 397-98 (4th Cir. 2010) (plaintiff's record demonstrated poor conduct, negative relationships, and complaints, and plaintiff's own assertions insufficient to avoid summary judgment).   Accordingly, the burden lies with Plaintiff to establish that Defendants' reasons were merely pretext for age discrimination. *Burdine*, 450 U.S. at 253.

---

[4]  The Court notes that Skeen's only specific recollection from memory of Ramos's refusal to follow directives while under Skeen's supervision related to Ramos's failure to terminate Friedrichs while Ramos contends this directive was discriminatorily based on age. (*See* Defs.' Ex. 3: 53-18-55:17, 57:12-58:6, 64:25-65-6.)

[5]  Brewer testified Ramos complained about use of "Indian resources and displacing American jobs," failed to incorporate key tasks or updates leading to outdated information, and assigned tasks to individuals without discussing that individual's capacity or consulting that individual's manager.

[6]  Krajewski testifies she received an email from Brewer documenting this incident.

In the final stage of the *McDonnell Douglas* burden shifting test, a plaintiff's ultimate burden toward establishing pretext is evaluated under a two-part approach. As stated, once Defendants have offered legitimate nondiscriminatory reasons for termination, Plaintiff must demonstrate "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143. First, Plaintiff must establish that the proffered reason is false, and second, Plaintiff must establish that the alleged form of discrimination was the real reason. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (citing *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)). In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. at 146, the Supreme Court noted that "the factfinder's rejection of the employer's legitimate, nondiscriminatory reason . . . does not *compel* judgment for the plaintiff." (Citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)). Plaintiff must somehow satisfy the second requirement because "[t]he ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's [alleged] reason is correct." *Id.* at 146-47 (internal quotation marks omitted).

Discrimination may sometimes be inferred based solely on finding false the defendant's proffered reasons. Once a plaintiff has established the prima facie elements and demonstrated the falsity of the defendant's legitimate explanation, the "rejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* at 147 (quoting *St. Mary's Honor Center*, 509 U.S. at 511). Thus, a court can infer from the falsity of a defendant's explanation that the employer is merely covering up a discriminatory purpose. *Id.* The Court cautioned that there would still be "instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's

explanation, no rational factfinder could conclude that the action was discriminatory." *Id.* at 148. Although additional evidence is not always required, the appropriateness of judgment as a matter of law will depend in each case upon various factors. *Id.* Declining to list all the potential circumstances, the Court suggested those factors could "include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." *Id.* at 148-49.

Thus, a plaintiff may not simply allege that the employer's stated reasons were inaccurate without also tethering (or enabling the court to tether) the employer's decision to the discriminatory reasons. Plaintiff must first undercut or invalidate the employer's stated reasons and also establish through evidence or through an inference that the improper discriminatory motivation was the real reason.

In *Holland*, the evidence showed that the decision maker honestly believed that the justification for termination was accurate. *Id.* at 217. Even though the plaintiff sufficiently invalidated the employer's stated justification, this evidence only addressed half of the requirement to overcome pretext by failing to connect the discriminatory reasons as the true justification. *Id.* The instant case is identical to *Holland* in this respect. Plaintiff submits declarations from himself and Rob Goldberg to suggest Defendants' stated reasons are artificial pretext for age discrimination. (*See* Pl.'s Exs. J, K.) Specifically, Goldberg's Declaration states that Plaintiff *did not* have inappropriate interpersonal interactions in an attempt to erode Defendants' stated justifications related to Plaintiff's demeanor in general and during the conference call with Lynn. (Pl.'s Ex. K ¶ 2.) Plaintiff's declaration similarly denies many of Defendants' assertions and takes specific issue with Brewer's two purported final straws. (Pl.'s Ex. J ¶¶ 22, 24.) Together, these two pieces of evidence do call into question the veracity of

Defendants' stated reasons, but in the absence of other evidence, they do nothing to tether age discrimination by Brewer or anyone else as the real reason. Furthermore, even if Plaintiff did not commit any of the unprofessional actions alleged by Brewer, Plaintiff has still failed to establish that Brewer did not honestly believe that he had committed them. Although Defendants' termination of Plaintiff's employment for erroneous reasons might be impetuous, it would not constitute unlawful employment discrimination on the basis of age.

Plaintiff also attempts to demonstrate pretext with largely the same evidence used to establish the prima facie case. First, Plaintiff points to Defendants' lack of formal documentation regarding performance and notes Defendants' failure to follow Human Resources' recommendation that this be done. (Defs.' Ex. 6: 101:3-102:5.) Second, Plaintiff attempts to rebut Defendants' legitimate reasons based on the positive email from Brewer to Ramos approximately one month prior to Ramos's termination. (Pl.'s Ex. E.) Finally, Plaintiff alludes to the idea Skeen's role as CTO enabled him to remain in a position of power and control over Plaintiff's employment noting Skeen's undisputed statements about age. (Defs.' Ex. 4: 113:10-13.)

Despite the absence of a formal improvement plan or written reprimand, Plaintiff fails to show that Defendants were satisfied with his employment to contradict Defendants' statement to the contrary. The email from Brewer, without more, fails to create a genuine issue of material fact regarding Defendants' stated reasons. The perspective of a listener who is not involved with the decision making process is not relevant to establishing whether Brewer was satisfied with Plaintiff's performance. *King v. Rumsfeld*, 328 F.3d at 149 (stating that neither plaintiff's own testimony nor testimony from plaintiff's coworkers could "sustain a challenge to appellee's proffer that [plaintiff] was not in fact meeting appellee's legitimate performance expectations"

even if coworkers believed that plaintiff was doing a good job) (citations omitted).   Thus, Plaintiff's claim fails under *McDonnell Douglas*.   No facts before the Court could permit a jury to infer that Defendants' reasons for terminating Ramos were mere pretext for age discrimination.

Plaintiff also argues that there is direct evidence in support of Defendants' discriminatory intent through Skeen's undisputed statements indicating his intent to remove older workers. While Skeen's comments are indicative of discriminatory intent, without more, this evidence cannot sufficiently establish age as the "but for" cause of Plaintiff's termination.   Skeen did not maintain control of Plaintiff's employment.   Even though the decision maker solicited feedback from Skeen, evidence demonstrates that this feedback neither instigated nor solidified the decision to terminate.   Furthermore, even if Skeen's comments were utilized and relied upon by Brewer in forming an incorrect opinion about Plaintiff's performance, this would only establish that the reason for termination was untrue—not that the reason for termination was Plaintiff's age.   Plaintiff has not presented evidence that Brewer and others in the chain of approval of his termination did not honestly believe that Plaintiff: (1) had negative interpersonal interactions, (2) did not follow directions, (3) was not performing adequately on the project, (4) threatened not to work, and (5) acted unprofessionally on the conference call.

Plaintiff's attempt to call into question whether the stated reasons were true is not sufficient, without more, to allow the Court to infer Plaintiff's age as the real reason.   There is nothing in the record to suggest that Brewer, Krajewski, or anyone else held this same view or made any age-based discriminatory statements.   Thus, Skeen's comments cannot rise to the level of indicating Plaintiff's age was the determining factor.   Plaintiff has failed to show as a matter of law that in the absence of Skeen's inappropriate remarks and purported influence on Brewer

he would not have been terminated.  In the face of Defendants' stated reasons for Plaintiff's termination, Skeen's inappropriate remarks are simply insufficient to establish that Plaintiff's termination was pretextual.

Therefore, the Court grants Molina's Motion for Summary Judgment on Plaintiff's claim of age-based discrimination because even if Plaintiff could establish a prima facie case, Plaintiff fails to rebut Defendants' legitimate nondiscriminatory reasons for termination as mere pretext for age discrimination.

**B.      Plaintiff Fails to Establish a Claim of Retaliation**

In addition to his claim of age discrimination, Plaintiff further contends that Defendants retaliated against him as a result of his complaints about Skeen's desire to terminate Friedrichs due to his age.  The Court grants Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim because Plaintiff fails to establish causation between the protected activities and the adverse employment action and further fails to produce sufficient evidence to rebut as mere pretext Defendants' legitimate and non-retaliatory justification.

**1. Plaintiff Fails to Meet the Prima Facie Case**

The Court finds that Plaintiff fails to establish a prima facie case for retaliation because Plaintiff has not produced sufficient evidence to create a genuine issue of fact regarding causation between Plaintiff's termination and his protected meetings with Krajewski.

To establish a claim of retaliation, Plaintiff must demonstrate (1) that he engaged in protected activity, (2) that Defendants took an adverse employment action against him, and (3) a causal connection between his engagement in the protected activity and the adverse action. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).

The Court finds that Plaintiff engaged in protected activity through the multiple conversations with Krajewski discussing age. "Title VII protects the right of employees to oppose any 'unlawful employment practice' under Title VII." *Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003) (citing 42 U.S.C. § 2000(e)-3 (2003)). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999) (quoting *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). An employee is afforded the ability to complain to his designated human resources manager about a suspected improper practice. *Id.* Although Plaintiff may not have filed a formal complaint, his actions are entitled to protection even if he is simply seeking the human resource manager's counsel or advice on handling the situation. *Id.*

Defendants do not concede that Plaintiff's meetings with Krajewski constitute protected activity and rely on *Johnson v. Mechanics & Farmers Bank* to argue Ramos did not sufficiently arouse Krajewski's concern. 309 F. App'x 675, 684 (4th Cir. 2009). However, Krajewski's testimony makes clear that she understood Plaintiff had concerns about Skeen's age-related motives. (Defs.' Ex. 5: 49:12-51:5; 52:20-53:4.) *Johnson* states that the underlying discrimination claim need not be successful in order for a plaintiff to prevail on retaliation as long as he "*subjectively* (that is, in good faith) believed that his employer violated the ADEA, and that his belief was *objectively* reasonable in light of the facts." *Id.* at 685 (quoting *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003)). Plaintiff's testimony verifies his subjective belief that Skeen was engaging in age discrimination, and in light of the statements he made to Krajewski, this belief is also objectively reasonable. On balance, and in viewing the evidence in

24

a light most favorable to Plaintiff, these conversations between Plaintiff and Krajewski are sufficient to find Plaintiff engaged in protected activity.

Plaintiff's termination satisfies the prima facie requirement that the employer took an adverse action against Plaintiff. Lastly, Plaintiff must establish a causal link between his engagement in the protected activity and the adverse employment action. In order to establish a causal connection, Plaintiff must show the employer terminated him or removed his team "*because* the Plaintiff engaged in a protected activity." *Holland*, 487 F.3d at 218 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). Furthermore, as a result of the Supreme Court's ruling in *Nassar*, 133 S. Ct. 2517, the Supreme Court clarified that claims of retaliation are evaluated under a "but for" causation standard, and not under the "motivating factor" standard used to evaluate Title VII status-based discriminatory claims. *Id.* To meet the "but for" standard, a plaintiff must show that "but for" the protected activity the plaintiff engaged in, the employer would not have taken the adverse employment action. *Id.*

In order to demonstrate a causal link between the protected activity and the decision maker's decision to take adverse employment action, Plaintiff must make a threshold showing that the decision maker had knowledge of the engagement in the protected activity. Plaintiff has not proffered any evidence to establish that Brewer had knowledge of the content of Plaintiff's multiple meetings with Krajewski. On the other hand, it is clear from the evidence that the interactions between Brewer and Krajewski were frequent, and Brewer's knowledge of the content of those meetings would come as no surprise. Furthermore, although Brewer acted as the initial decision maker, the decision to terminate also passed through Krakewski and at least two other individuals for approval.

25

Plaintiff carries the ultimate burden to establish that Brewer had knowledge of the protected activity. Even assuming Plaintiff can establish Brewer's knowledge of the protected activity, Plaintiff has not pled sufficient facts to permit the inference that the removal of his team and his termination would not have occurred "but for" his engagement in the protected meetings with Krajewski. The point becomes moot because against Defendants' legitimate non-retaliatory basis of Plaintiff's unprofessional conduct, Plaintiff cannot sufficiently demonstrate pretext even if the causation element is established. Thus, Plaintiff's claims are defeated through the *McDonnell Douglas* burden-shifting analysis that follows.

### 2. Plaintiff Fails to Rebut Legitimate Reasons for Alleged Retaliation

Assuming, *arguendo*, that Plaintiff can establish a prima facie case for retaliation, the Court finds that Plaintiff fails to rebut Defendants' legitimate and non-retaliatory reasons for both his termination and the removal of his team as pretext for retaliation under the well-established burden shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-05.

### a. Plaintiff's Termination as an Adverse Retaliatory Action

As stated, once Plaintiff establishes a prima facie case, the burden shifts to Defendants "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Lettieri*, 478 F.3d at 646 (quoting *Hill v. Lockheed Martin*, 354 F.3d at 285). If the employer submits a legitimate non-retaliatory reason, then the ultimate burden shifts back to Plaintiff to adduce "that the legitimate reasons offered by the defendant were not its true reasons," but were mere pretext. *Reeves*, 530 U.S. at 143 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. at 253). As discussed, "[a defendant's] burden is one of production, not persuasion." *Reeves*, 530 U.S. at 142. Once a defendant has carried its burden of production, a plaintiff must show the legitimate non-retaliatory justification is merely pretext for retaliation. *Burdine*, 450 U.S. at 253.

Under identical reasons to those previously stated with respect to Plaintiff's age discrimination claim, Defendants assert five legitimate non-retaliatory reasons for Plaintiff's termination.  In order to rebut these legitimate reasons, Plaintiff must establish first that these legitimate reasons are not truthful and second that the real reason for the adverse action was Plaintiff's engagement in the protected activity.  *See Holland*, 487 F.3d at 218 (citing *Beall v. Abbott Labs.*, 130 F.3d at 619).

Plaintiff relies on *Lettieri* for its holding that, "[a] supervisor's pattern of continuing retaliatory conduct and animus setting an employee up for termination may establish a causal link sufficient to withstand summary judgment." 478 F.3d at 650-51.  However, this argument is misplaced because the facts in *Lettieri* are clearly distinguishable.  In *Lettieri*, the manager took multiple intervening steps which occurred regularly after the plaintiff submitted the complaint including eliminating her transfer, stripping her job duties, and reducing her supervisory responsibilities and authority to justify the claim her position was not needed.  *Lettieri*, 478 F.3d at 650-51.  Although Plaintiff latches on to the reduction of supervisory duties in an effort to withstand summary judgment, these multiple intervening steps simply do not parallel the removal of Plaintiff's team and subsequent assignment to the "monster project" prior to his termination.

Plaintiff also asserts that the existence of emails between Skeen and other employees regarding Plaintiff's impending termination creates an inference of Skeen's involvement in Plaintiff's termination.  It is undisputed that Brewer sought Skeen's input regarding Plaintiff's performance during Skeen's evaluation of Plaintiff.  Skeen's emails while serving as CTO suggest that he remained in an influential position over Plaintiff's employment, and Skeen himself acknowledged that his recommendation may have influenced Brewer's decision to

27

terminate Ramos.  Nonetheless, Skeen's ominous emails two months prior to termination and the communication between Skeen and Brewer do not create the inference that Brewer's stated reasons for termination were not truthful.[7]

As stated, Plaintiff may not simply establish that the employer's legitimate permissible reasons were inaccurate without also demonstrating a nexus between the protected activity and the employer's decision to terminate.  Plaintiff's declarations simply deny Defendants' assertions without tethering the termination to the protected meetings with Krajewski.  Plaintiff's evidence may undercut Defendants' proffered reasons for termination, and may even suggest Plaintiff was set up for failure.  Nonetheless, Plaintiff does not satisfy the second prong of the test under *Holland* that requires demonstrating the employer was motivated by retaliation for engaging in protected activity.  Plaintiff cannot establish that Defendants' decision was mere pretext for retaliation for the same reason he could not establish his termination was due to age discrimination.

Although Plaintiff has drawn the line of inference some of the way, without more, he has not provided sufficient facts to support a plausible inference that Defendants terminated him in retaliation for his meetings with Krajewski and not due to Plaintiff's poor performance and negative interpersonal relations.  No facts before the Court could permit a jury to infer that Defendants' reasons for terminating Plaintiff's employment were mere pretext for retaliation. Thus, Plaintiff's retaliation claim fails under the third step of *McDonnell Douglas*.

### b. Removal of Plaintiff's Team as an Adverse Action

During oral argument, Plaintiff raised that the removal of his subordinate employees constitutes an additional adverse retaliatory employment action, but the Court need not reach this

---

[7] Defendants contend that Plaintiff's argument regarding Skeen's influence over Brewer is an allusion to "cat's paw" liability" from *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011).

issue. Even if the removal of Plaintiff's team could constitute an adverse employment action, Plaintiff's argument would still fail due to the lack of evidence to rebut Defendants' assertion that Plaintiff's team was removed for legitimate and non-retaliatory reasons.

The Supreme Court clarified the standard for determining how harmful an act must be to be viewed as retaliatory conduct in *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 63 (2006). *Burlington* clarified the nebulous standards being applied by different circuits, and broadened the scope of retaliation particularly in light of the objective to protect employees against retaliatory acts. *Id.* at 63-64. After *Burlington*, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The standard of material adversity requires a plaintiff to establish that the change in employment was not merely trivial. *Id.* at 68. This standard applies only to the alleged retaliatory act and not the employer's alleged conduct that led to the filing of the complaint. *Id.*

Although removing all of Plaintiff's employees with little explanation is suspicious, this action in contrast with Plaintiff's transfer to the "monster" 4.8 upgrade project makes the perceptions of a reasonable employee in Plaintiff's position difficult to discern as a matter of law. Actions that could be perceived as retaliatory in one workplace may not be in another based on the particular circumstances. *Id.* at 69.

In accordance with *Burlington*, a jury could find that a reasonable employee would perceive the removal of Plaintiff's entire team as materially adverse. 548 U.S. at 63. Accordingly, in the second stage of the *McDonnell Douglas* burden-shifting test, Defendants

29

would be required to proffer a legitimate nondiscriminatory reason for the removal of Plaintiff's team. Defendants offer testimony that an organizational change is what motivated the decision to remove Plaintiff's team. (Defs.' Ex. 6: 56:3-57:17, 61:3-66:15; Defs.' Ex. 3: 41:6-43:6.) Defendants also reassigned Plaintiff to a "monster" and important project while keeping his salary the same. (Defs.' Ex. 4: 86:9-87:13.) Defendants' further state that the removal of Ramos's team "was not a demotion [and] there was no effect on Ramos's position or compensation as a result . . ." (Defs.' Mem. Supp. Summ. J. at 7, Doc. 46; Defs.' Ex. 4: 109:1-5, 112:7-21; Defs.' Ex. 6: 57:1-4, 59:12-23.)

Once this legitimate justification has been given, Plaintiff's burden is to demonstrate that Defendants' justification of an organizational change is mere pretext for retaliation. In order to infer retaliation as the "but for" cause of the removal of Plaintiff's team, Plaintiff must first demonstrate that the legitimate proffered reason is not the true reason, and must further allow the inference that retaliation is the real reason. *See Holland*, 487 F.3d at 218 (citing *Beall v. Abbott Labs.*, 130 F.3d at 619). Rather than provide evidence to undermine Defendants' justification of an organizational change, Plaintiff simply denies Defendants' justification and provides one of his own. (Pl.'s Opp'n at 4, Doc. 50.) Plaintiff alleges that Brewer told him that his team was removed because of Plaintiff's failure to terminate Friedrichs. (Pl.'s Opp'n at 8, Doc. 50; Defs.' Ex. 4: 125:4-25.) As mentioned, Defendants' burden is one of production and not persuasion. Thus, the credibility of Plaintiff's statement is not weighed against Defendants'. Plaintiff's own assertion that Brewer gave him a justification different from the one now proffered is not sufficient to create a genuine issue of material fact with respect to rebutting Defendants' justification. Plaintiff further alleges that no other organizational changes took place across the company beyond the removal of his team. (Pl.'s Opp'n at 4, Doc. 50.). However, in the absence

of any additional evidence in support of this contention, this bald conclusory statement is insufficient to rebut Defendants' legitimate proffered justification of an organizational change. Furthermore, even if Plaintiff could demonstrate that no other organizational changes took place to undermine Defendants' explanation, Plaintiff would still fail under the second prong of *Holland* to connect the removal of his team to his protected meetings with Krajewski.

Plaintiff has not provided sufficient evidence to support a plausible inference that Defendants' decision to remove his team was based solely on Plaintiff's engagement in the protected discussions as opposed to the Defendants' legitimate organizational needs. No facts before the Court could permit a jury to infer that Defendants' reasons for removing Plaintiff's team were mere pretext for retaliation. Accordingly, even if the removal of Plaintiff's team could be viewed as adverse, Plaintiff's claim of retaliation by removal of his team would nonetheless fail under the third stage of *McDonnell Douglas*.

Assuming, *arguendo*, that Plaintiff could establish a prima facie case for retaliation for either of these adverse actions, the Court finds that Plaintiff fails to identify a genuine issue of fact that Defendants' legitimate and non-retaliatory reasons for both his termination and the removal of his team are a pretext for retaliation under the well-established burden shifting test from *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802-05. Therefore, the Court grants Molina's Motion for Summary Judgment on Plaintiff's retaliation claim because even if Plaintiff could establish a prima facie case, Plaintiff fails to rebut Defendants' legitimate reasons as mere pretext for retaliation.

## V.    CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Defendants and against Plaintiff because (1) Plaintiff fails to raise a genuine issue of fact regarding his age

discrimination claim, and (2) Plaintiff fails to raise a genuine issue of fact regarding his remaining claim of retaliation.   Accordingly,

   **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 46) is **GRANTED**;

   **IT IS FURTHER ORDERED** that Counts I and II of Plaintiff's Complaint are **DISMISSED with prejudice**.

   **IT IS SO ORDERED**.

   ENTERED this _____ day of August, 2013.


Alexandria, Virginia
8/ ___ /2013

                                         _____/s/_____
                                         Gerald Bruce Lee
                                         United States District Judge